to the sixth case, Johnson v. Winstead. Mr. Richards. Thank you, Your Honor. Your Honor, I represent Anthony Johnson, the appellant in this case. I'll just also note that Mr. Johnson and his wife were present outside the court room a few moments ago. They felt it was inappropriate for them to come in just because the way they were dressed. But I informed them that they could see the video, and I think they will do that. I'm not sure I understand. Are you requesting because of his dress he not come to court? No, I was just informing the court that he did take the case seriously enough to be present. He just didn't want to be in the courtroom because he felt embarrassed about it because of his dress. It should be clearly understood that we're not in no way precluding his attendance. I know you're not. That's clear. I hope he understands that also. He does. Well, and also there will be no video. There's an audio recording. Audio. Well, he'll be able to hear it then. Okay. This comes forth on an appeal from a 12b6 dismissal. So the issue is whether this is a purely legal question, which is what the appellees say, or whether there's a factual issue and the case should go forward. Now, the appellee's position, which was not exactly the same as the district court's position, is that as a matter of law, any Fifth Amendment claim, at least involving confessions or statements, accrues at the moment when the statement is introduced in court. And as a matter of law, the introduction of the statement would not deprivation, does not impugn the validity of the subsequent conviction. So therefore, all these claims accrue at the moment they come into court and they are barred under an extension of Wallace v. Cato as to every single Fifth Amendment claim. Now, the appellees acknowledge that this is not the way this court has treated those claims. This court has treated Fifth Amendment claims on a kind of fact-by-fact or case-by-case basis. And I certainly think that would be a better approach. If there were to be any categorical approach, it would be our position that the line should be drawn between the Fourth Amendment claims and the Fifth Amendment claims, and for this reason. If you look at Wallace v. Cato, the court is sort of sui generis, and it is sui generis in the law in many respects. Major reason being that a Fourth Amendment claim, by definition, involves deprivation of a liberty or deprivation of property, which is something that one feels immediately upon being seized or upon having one's property taken. And therefore, in Wallace v. Cato, the Supreme Court decided that those claims accrue at that moment of the seizure, and that the judgments as to them or deprivations do not necessarily impugn the validity of any further conviction. Fifth Amendment claims, by definition, are very different, because in every Fifth Amendment claim, it's not a claim by itself that one's liberty is taken. It's not a claim by itself that one's property is taken. The claim is that government agents violated some rule or law and got a statement from you. The statement by itself deprives you of nothing. It's a it's nothing. Who cares? If the statement is used in court, and if it leads to your conviction, it's a big, big deal. And it seems to me, on that logic, if you follow out Wallace and combine it with Heck, every confession or statement necessarily impugns the validity of the subsequent conviction, if it's used in court. And the such claims are barred by Heck until there's an acquittal. And therefore, the statute of limitations runs on the acquittal. That would be our strong position, the broad position. Now, in terms of the specifics of use of Mr. Johnson's statements in court, there is a complicated procedural history. And the statements are complicated, and the intersection of the law is also complicated. The first point I would make to that is, that's a good reason why it was not a great idea to dismiss this on 12b-6, because essentially, the judge was making a lot of factual determinations. The statements weren't so bad. They didn't hurt him so much, et cetera, et cetera. First of all, we dispute all that. The statements were critical. This was a 17-year-old who made statements to authorities, was then released, actually for over a year, then was re-arrested when certain people came forward and made statements against him. Those people, without exception, recanted what they had said to the police and did so at trial. So all that was left, once you subtract the recantations, which reasonable juries might well have disbelieved, were Anthony Johnson's statements. And the statements were... There was no corroboration? What? There was no corroboration? Apart from those witnesses, no. There was no physical evidence. Were they impeached with their prior inconsistency, I assume? You bet. Okay. Grand juries, prior written statements, they denied them all. They said they were coerced. They said whatever. Okay. One of them also, his testimony wasn't very probative by itself. He said, Anthony had come to him later and said, we busted a move, which could mean kind of anything. As I understand it, the admissibility of his statements to the police was not litigated pre-trial? No. Actually, the state pointed out that there was... I was actually not aware of this. There was, I believe, a pre-trial motion suppressed before the first trial. Okay. There was denial. That was not appealed, and then that was left there. Okay. I don't think that's of any particular significance. There's no exhaustion remedy. And there's no particular significance to the fact that it wasn't appealed. Generally speaking, where motions suppressed fail on credibility determinations, or where the defendant doesn't testify, which often happens, by the way, because the motion is made more for discovery purposes than anything else, it's quite reasonable for appellate attorneys not to include those in an appeal. And in this case, both appeals were successful. The first one got him a new trial because of jury confusion as to the state of the law. The second one, which I did, got him an acquittal on appeal. For insufficient evidence of accountability. Correct. Right. So it wasn't a statements-based appeal. No. I did not challenge the statement. I probably couldn't have because it had been litigated and not raised on the first appeal. However, it is not true that Mr. It was a position of the defense that the statement was accurate in every respect. In fact, in one critical respect, the idea that he had drove the shooter away, the actual shooter, Clayton Sims, appeared on his behalf at his trial and denied that. He said, Anthony just drove away. So the statement was critical. It was also critical for the first jury because they had a number of questions about when the crime ends, which is a big question. Well, confessions usually are pretty powerful evidence. Inculpatory statements, maybe not full confessions, but inculpatory statements. Either one are sort of devastating. And I've done a lot of criminal cases and I can say that. They're even devastating if they have exculpatory elements, particularly because they constrain what you can do in terms of putting the defendant on. So, yeah, the confession was a big deal. It did impugn the validity of the conviction. And therefore, the judgment should be reversed. Do you want to speak to the position of the defendants on absolute immunity? Well, I would like to, but I'm not sure I understand it. What they're saying is there's testimonial immunity because the officers testified to the statements in court. But if that was true, then there can never be any Fifth Amendment claim because Fifth Amendment claims only accrue when they testify in court. So if they didn't testify in court, the confession wouldn't be used in court and we'd lose. Or if they did testify in court, we'd lose because of testimonial immunity. I mean, that is simply silly in our view. That just means that there's no Fifth Amendment claims because every time an officer testifies, he has immunity. That can't be the law. But even if you win on the statute of limitations and the case goes back for trial, you will have to contend with that issue. And you're asking for an exception to testimonial immunity for Fifth Amendment claims. Correct. I mean, otherwise, Fifth Amendment claims have no meaning and we will contend with that issue. Is there any support for such an exception? Well, I don't think there's any support for the use of testimonial immunity to bar a Fifth Amendment claim either. I think it's a stretch, as is the third argument, which is that Miranda claims, by definition, have no damages attached and, therefore, should be thrown out of court in that basis as well. Neither of those claims was raised below. They're both sort of, I'd say, Hail Mary passes to help out the district court because it wasn't raised below and he didn't reach those issues. If there's a remand and they want to readdress those, we'll certainly be happy to do that. Thank you, Mr. Chairman. Mr. Newman. May it please the Court. Carl Newman on behalf of the FLEs. This morning, I would like to address primarily the Hectorford accrual question and, time permitting, I'll reach the testimonial immunity argument. We will rest on our brief for the issue as to whether, after Chavez, there are damages available for the mere failure to provide Miranda warnings. Now, to start, I want to say, first of all, something we argue in our brief that I heard no response to just now, which is that even on Mr. Johnson's own, what we argue is an erroneous understanding of HEC. Where's your opponent? Oh, I'm sorry. I'm safe. As I was saying, even on Mr. Johnson's erroneous understanding of HEC, there would be no way to make any claim based out of the 2007 trial timely, and so I'll confine my comments this morning to the 2012 trial only. Now, we argue for two reasons, essentially, that a Miranda claim, a self-incrimination 1983 claim, is not HEC barred. The first is straight under Wallace v. Cato, and that analysis, which is not merely an analysis, although the case concerned a Fourth Amendment claim, but is an analysis of how the HEC bar itself works. And what Wallace says is that if a claim is complete, it accrues as soon as that claim is complete, and if at that moment there is no conviction, as there was not here, then it is impossible for it to be HEC barred at that moment, and then it will not benefit from HEC deferred accrual later on. That analysis under Wallace is not just sui generis, as I believe I heard my colleague say about the Fourth Amendment. It is an analysis of the HEC bar. But to turn here to our sort of second argument about whether Miranda claims necessarily imply the invalidity of a conviction, HEC itself actually equates Fourth Amendment claims with self-incrimination clause claims, and we cite that HEC footnote 7, which cites Arizona v. Fulminante. And, of course, Fulminante says that a coerced confession claim is analyzed as a harmless error, potentially harmless error. So that decision, that language in HEC actually says that these Fourth Amendment claims and self-incrimination clause claims should be treated the same. This Court's decision, including the most recent decision, which my opponent has not mentioned this morning and did not mention in his opening brief and, of course, neglected to file a reply brief, is in Hill v. Murphy. So Hill actually says that two different self-incrimination clause claims were not HEC barred, and it cites to HEC footnote 7, which we rely on, and to this Court's decision in Apompa v. Lange. Now Apompa is a Fourth Amendment decision, but it relies in turn on Simmons v. O'Brien, which is this Eighth Circuit case following HEC footnote 7, which squarely holds that a Miranda claim is not HEC barred. And after Wallace, what that means is it immediately accrues on use. And, correspondingly, the claim must be brought in Illinois as against us within two years of when that statement is used. That period ran before Mr. Johnson filed this complaint, and the statute of limitations does bar his claim. Well, the Hill case split the difference. There were three statements. Yes, Your Honor. There are three statements, and as we explain in our brief, two of them, which are sort of the ordinary self-incrimination clause case, those are not HEC barred. The third is a statement which is sort of the aptus reus of the charge of false statement. Now that is precisely the sort of counterexample that HEC itself offers. HEC says in footnote 6, as an example of a claim which would be HEC barred, a Fourth Amendment claim for excessive force where the crime of conviction is resisting arrest, which under many state statutes for resisting arrest, that will actually require negating, approving the excessive force would require negating an element of the crime of conviction. So what Hill suggests is these two ordinary Miranda claims, those go forward. They are not HEC barred, and thus they would not benefit from HEC deferred accrual. This third statement is very different because in order to succeed in proving that it was coerced in the civil case, they would have to negate an element of the crime of conviction, and that is why it is HEC barred. We believe that this categorical analysis, one of the few decisions that actually I didn't even hear this morning that is cited in Mr. Johnson's brief is this court's decision in Moore v. Burge, and I want to make sure this is perfectly clear. The analysis, the question here is about the HEC bar or HEC deferred accrual of self-incrimination clause claims only, which is to say that other Fifth Amendment rights actually do receive different analysis. And in fact, this court's decision in Moore v. Burge splits the HEC bar, different Fifth Amendment rights on different sides of the HEC bar, substantive due process on one, Brady claims or a fabrication due process claim on the other. Our position, which again is what HEC footnote 7 says, is that a Miranda claim, a self-incrimination clause claim is firmly on the not HEC barred side of the line and thus would never benefit from deferred accrual. I want to make just a few quick points based on what my colleague said this morning, the first of which is that the position is not that these claims are barred under Wallace, but rather that they immediately accrue because they are never HEC barred. So to clarify, what we're arguing for is a rule in which plaintiffs who feel, who have a claim that their self-incrimination clause rights were violated are able to sue immediately and have whatever the statute of limitations for that jurisdiction is. Not that those claims are barred. The problem is the converse rule because Miranda claims are subject to harmless error analysis and we sort of play out this hypothetical in our brief. If you have someone whose self-incriminating statement is introduced in a criminal trial and is deemed harmless error, that's a person who we all apparently agree their Miranda rights have been violated. Adopting Mr. Johnson's rule makes HEC essentially a permanent bar against that right ever being vindicated. Wallace notes in footnote 6 that HEC is not designed to produce an immunity, so an interpretation of the HEC bar, which makes it impossible to sue over Miranda claims for some plaintiffs who have a violation, is one that cannot be adopted. How would damages be measured in that situation? The harmless error situation, Your Honor? Right. I believe in that case they'd probably really only be able to get nominal damages in that case, but that's still a claim that would be actionable, we believe, under 1983. And I want to get back to Fulminante just for a moment. The position that I believe I heard Mr. Johnson put forward to the court today was that every single confession, because confessions are such powerful evidence, every single confession would impugn the validity of every conviction in which it's introduced. That position cannot be squared with Arizona v. Fulminante. The mere fact that harmless error analysis can apply means that it cannot be the case that every time a self-incriminating statement is used that that would be just per se reversible error. That's not what Fulminante holds. And just quickly I want to get to this more factually specific idea before I move on to testimony of immunity, which is just to correct something that my colleague said this morning. There was additional corroboration beyond just the impeachment by prior statements of Swain and Rufus Johnson. In the second trial, the admitted shooter testifies. He's protected by double jeopardy at that point, having been acquitted in the 2007 trial. And his testimony that Johnson offers as his only defense witness entirely corroborates basically everything that's in these statements. And it's really quite powerful evidence to have the admitted shooter on the witness stand saying, yes, he drove me to the scene, and yes, I told him to follow the car, et cetera. Moving just to the testimony of immunity points, our argument is that the claim here is based solely on the testimony. And I acknowledge that in order to find that to be the case, you do have to look to our fairly voluminous appendix, which includes the entirety of the transcript of Detectives Lascola and Detective Winstead's testimony. And the reason for that is this. The complaint says that the statements were used against him at trial, and actually all three of Mr. Johnson's appellate court criminal decisions note that there was no signed confession introduced at his trials. But the issue that we're raising is that it only came in through the detective's testimony. There was no police report that came in. And we spent some time in our brief distinguishing a fabrication claim, which is entirely different because it is a different constitutional right at issue, but the recent decision of Avery v. City of Milwaukee. And the reason we spent some time distinguishing it is to say that testimony of immunity applies when the claim is based solely on testimony as it is here. That isn't to say that every Miranda claim is going to be barred by testimony of immunity. In fact, at least the Illinois appellate court seems to think it's unusual for someone's self-incriminating statement to come in solely through the detective's testimony without anything signed or written by the criminal defendant. And in a case where that evidence is introduced, it won't just be based on testimony. And in the absence of any further questions from the court, we'll ask that the judgment be affirmed. All right. Thank you, Mr. Newman. Mr. Richards, your time has expired, but you may have the two minutes rebuttally requested. Thank you. Let me just deal with two points briefly. First of all, as the footnote in Heck v. Humphrey, of course that's dicta and occurred many years before these developments. In addition, however, if you take that to its logical conclusion that some statements are harmless, and there's the odd statement or some statements that would be harmless, they're very, very rare but possible, then in the case of those statements, which are so minor, perhaps Heck is not a bar. But in cases where the statement is integral to the conviction, as in this case, Heck is a bar, and therefore there's no accrual until there's an invalidation of the conviction. The second point is testimonial immunity. The distinction raised between having an officer testify to an oral statement and having an officer testify to a written statement is, frankly, ridiculous. You need an officer to authenticate the written statement. I think you read my thoughts and made my argument for me. So with that, I will sit down. Thank you. Thank you, Mr. Richard. Mr. Newman? The case is taken under advisement. The court will stand at recess.